**MARTINEZ v. PLUMEY.**

Circuit Court of Appeals, First Circuit.
July 26, 1927.

No. 1917.

1. **Boundaries** ⬤⟿37(1)—**Evidence held to sustain finding of Porto Rican courts as to boundary of estate.**

Evidence *held* to sustain finding of Porto Rican courts as to particular boundary of estate.

2. **Courts** ⬤⟿406(1¼)—**Boundary findings of Porto Rican courts are conclusive on Circuit Court of Appeals, unless clearly erroneous.**

Finding of Porto Rican courts as to boundaries is binding on Circuit Court of Appeals, unless clearly erroneous.

Appeal from the Supreme Court of Porto Rico; Pedro De Aldrey, Associate Justice.

Action by Acisclo Marxuach Plumey against Antolin Nin Martinez. From a judgment of the Supreme Court of Porto Rico, affirming the judgment of the District Court of San Juan, defendant appeals. Affirmed.

Ramon Siaca, of New York City (Juan de Guzman Benitez, of San Juan, Porto Rico, on the brief), for appellant.

Martin Travieso, of New York City, for appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and LOWELL, District Judge.

JOHNSON, Circuit Judge. This is an appeal from a judgment of the Supreme Court of Porto Rico, affirming a judgment of the district court of San Juan in an action brought by the appellee against the appellant to recover possession of a certain tract of land situated in the Santurce ward, at a place known as Seboruco, in the city of San Juan. For convenience the parties will be designated as they were in the District Court. [1] The parties are adjoining landowners, and the complaint alleges: That the plaintiff is owner of a parcel of land consisting of

8.77 cuerdas situated in the northern section of the Santurce ward, in San Juan, Porto Rico, "bounded on the north by the Seboruco road, on the south by the Martin Pena Canal, on the west by the lands of the defendant, Antolin Nin Martinez, and on the east by lands of Mr. Lutz." That the defendant is the owner of a rural property with an area of 13.71 cuerdas, bounded as follows: "On the north by the Seboruco road, on the south by the Martin Pena Canal, on the west by Mr. Schirner, and on the east by lands of Rafael O. Mesorana now belonging to the plaintiff." That the plaintiff is in possession of only 5.20 cuerdas of land, and the defendant of 16.96 cuerdas, being 3.21 cuerdas more than he is entitled to.

The defendant filed a cross-complaint, in which he claimed that the plaintiff was in possession of 1.53 cuerdas of land belonging to him.

Both parties claim title from the Cortijo estate; the plaintiff through two deeds, by one of which 21.82 cuerdas of land were conveyed to him, and in which the southern boundary was given as the Martin Pena Canal. The second deed was for 9.40 cuerdas, and the southern boundary was like that in the former deed.

The defendant acquired his land from the Cortijo estate, through several mesne conveyances, and it is bounded on the south by the same canal.

By proceedings brought under the law of Porto Rico by the Cortijo estate in 1901 to determine its dominion title to the whole tract of land, its area was determined to be 40 cuerdas and so recorded in the proper registry. The people of Porto Rico were made a party to the proceedings.

The controversy between the parties arises from their different contentions as to what is the southern boundary of their lands. The District Court found that a railroad track, known as the railroad track of Rexach, built upon the northerly side of the canal about 40 years before suit was brought, for the purpose of transporting stone from a quarry, was the northerly boundary of the canal, and that, if this railroad track is taken as the southern boundary of the land, the Cortijo estate consisted of 40 cuerdas. It was contended by the defendant, Nin, that the southern boundary was the high-water line north of the railroad track, and, accepting this as the southern boundary, its area would be about 32 cuerdas.

The three parties who had acquired the land of the Cortijo estate, by a public instrument recorded in the proper registry, stated that the area of the whole tract was 40 cuerdas, and gave the number of cuerdas owned by each, and also stated that the part owned by the defendant, as well as that owned by the predecessor in title of the plaintiff, had as its southern boundary the Martin Pena Canal. Later, in 1918, when the government desired a military camp for troops, the defendant leased to the military authorities part of his property, with its southern boundary as the railroad track of Rexach, and a plan of the camp itself was made by the military authorities, wherein Nin's property appears as reaching down as far as the Rexach railroad track. The testimony was undisputed that north of the railroad track the ground was wet and marshy, and covered largely by a mangrove growth; that the roadbed of the track stopped the salt water from rising farther, and that the water that collected upon the north side of the track was rain water. It was also in the evidence that the defendant had built upon part of the low land extending to the railroad track a factory for making concrete blocks. The custodian of the public lands of Porto Rico testified that the Martin Pena Canal extends only to the Rexach track, built upon a macadam roadbed, and that all the land north of this track is owned by private parties.

[2] Whether the Cortijo estate extended to the Rexach track, or only to high-water mark, was a question of fact, and, as both the Porto Rican courts have held that the track is its southern boundary, we are bound by this finding, unless it is clearly wrong. This rule has been so many times announced by this court that it is unnecessary to cite any authorities.

A careful study of the record has convinced us that there was evidence to sustain this finding, and as the determination of whether the railroad track is the southern boundary line of the land of the Cortijo estate is decisive of the claims of the parties, and both the lower courts have found that it is, we do not find it necessary to consider the assignments of error in detail.

The judgment of the Supreme Court of Porto Rico is affirmed, with costs to the appellee in this court.